UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KERLY JEAN LOUIS,<br><br>              Plaintiff,<br><br>       v.<br><br>THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF CORRECTIONS,<br><br>              Defendants. | 24-CV-9718 (RA)<br><br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

This action arises from the brutal attack of Plaintiff Kerly Jean Louis, an employee at the Rikers Island ("Rikers") Mental Observation Housing Unit, by an incarcerated individual named Dennis Applewhite. Plaintiff brings this action against the City of New York ("the City") and the New York City Department of Corrections ("NYC DOC") (collectively "Defendants") pursuant to 42 U.S.C. § 1983, asserting that they failed to comply with various obligations to reform and ultimately close Rikers. These failures, he argues, violated his constitutional right to safety while working in a municipal jail, resulting in extensive pain and suffering. Now before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion in its entirety.

## BACKGROUND

The following facts are derived from the complaint and are taken as true and construed in the light most favorable to the plaintiff for the purposes of this motion. *See Walker v. N.Y.S. Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 242 (S.D.N.Y. 2020). A court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.

1991). It may, however, consider "documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit." *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018).

Plaintiff, a New York City correction officer ("CO"), initially filed this action in state court, after which Defendants removed it to federal court. *See* Dkt. No. 1 ("Compl.") at 1, 10. He alleges that on October 31, 2022, while working at the Anne M. Kross Center, a Mental Observation Housing Unit on Rikers Island, he was stabbed in the neck with an 8-inch spike from an industrial fan by detainee Applewhite, resulting in life threatening injuries. *See id.* ¶¶ 7–8, 12. He now contends that this attack was the result of Defendants' prolonged failure to comply with various court orders entered in an unrelated matter in this district, *Nunez v. City of New York*, No. 21 Civ. 5845 (LTS), and the City's plan to replace Rikers with four borough-based jails with the goal of improving safety for incarcerated individuals and staff. *Id.* ¶¶ 13–15.

The *Nunez* action was initiated in 2011 by a *pro se* plaintiff, Mark Nunez, who alleged excessive force by NYC DOC COs while incarcerated at Rikers. *See* Dkt. No. 28 ("Khan Decl."), Ex. A ("*Nunez* Compl."). It was subsequently certified as a class action, *id.*, Ex. B ("Stipulation and Order"), with the parties ultimately settling and entering into a Consent Judgment, which defined the plaintiff class as "all present and future inmates confined in jails operated by the [NYC DOC], except for the Elmhurst and Bellevue Prison Wards." *Id.*, Ex. C ("Consent Judgment") at 2. The primary aim of the Consent Judgment was to "protect the constitutional rights of the inmates confined in jails operated by the Department." *Id.* at 1 The *Nunez* court issued several subsequent orders, including the June 14, 2022 action plan, which focused on planning and implementing

various reform measures, including hiring new staff, improving security practices, enhancing staff accountability, and compliance reporting. *Id.*, Ex. D ("*Nunez* Action Plan"). The matter remains active and is before Chief Judge Swain, who determined that this case was unrelated. Dkt. Nos. 13, 15.

Separate and apart from the *Nunez* matter, Plaintiff relies on a 2017 initiative to close Rikers and, in its stead, build borough-based jails to house NYC DOC detainees. In the Complaint, he alleges that the construction of borough-based jails was contemplated in the orders issued by the *Nunez* court, *see* Compl. ¶¶ 13–15, and cites various "news accounts" that stated that "the Queens B[o]rough Jail was intended to be completed [by] about May or June 2022." *Id.* ¶ 15. He further refers to various efforts by the City to award the borough-based jail construction contracts. *Id.* ¶¶ 20, 24. As the *Nunez* orders make no such references, Defendants introduced the "Roadmap to Closing Rikers Island," a document issued by the Mayor's Office in 2017 that discusses the closure of Rikers and the construction of alternative facilities. *See* Dkt. No. 27 ("Defs. Br.") at 3–4; Khan Decl., Ex. E ("BBJ Plan"). The City also passed a series of local laws aimed at this transition, setting August 31, 2027 as the date by which the City must cease using Rikers for carceral purposes. *See* NY Local Law No. 16 of 2021; *see also* NYC Admin. Code § 4-215. Prior to this deadline "any portions of Rikers Island still in active use . . . shall remain under the jurisdiction of the [C]ommissioner of [C]orrection pursuant to section 624 of the charter." NYC Local Law No. 16 of 2021. The Court takes judicial notice of the BBJ Plan and relevant local laws and regulations promulgated by the City.

Plaintiff urges the Court to find that Defendants' alleged failure to comply with the *Nunez* Action Plan and Consent Judgment (collectively the "*Nunez* Orders") as well as the BBJ Plan led to unsafe working conditions that "violat[ed his] constitutional right to safety in the New York

3

City [j]ails." Compl. at 4–5. More broadly, he appears to assert that Defendants violated his due process rights under the Fourteenth Amendment pursuant to the state-created danger exception, by failing to comply with these and other policies aimed at making Rikers and its employees and detainees safer. Defendants have moved to dismiss. Dkt. No. 26 ("Defs.' Mot. to Dismiss"). For the reasons that follow, the Court grants the motion in its entirety.

**LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept as true all factual allegations . . . but [is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

**DISCUSSION**

### I. Section 1983 Claims

The Court understands Plaintiff to be asserting three claims under 42 U.S.C. § 1983, which collectively allege that the City's failure to comply with the *Nunez* Orders and the BBJ Plan, along

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

4

with other unnamed municipal polices, led to his attack since he would not have been working in such dangerous conditions that day had the City been in compliance. He contends that this failure constitutes a violation of the *Nunez* Orders and BBJ Plan, as well as a violation of the Due Process Clause of the Fourteenth Amendment pursuant to the state-created danger exception. Compl. ¶¶ 17–25. Defendants challenge Plaintiff's assertion that he is entitled to relief on these bases as he is neither a member of the *Nunez* plaintiff class nor a party to the action, and thus has no standing to sue for a violation of any court order in that action. With respect to the City's intention of constructing borough-based jails and closing Rikers, they maintain that he lacks any viable claim under Section 1983 for a purported violation of the City's local laws. Defs. Br. at 6–11. Finally, they argue that he otherwise fails to allege a violation of his due process rights pursuant to the state-created danger exception.  Dkt. No. 37 ("Defs. Repl.") at 4–9. The Court agrees.

### A.  *Nunez* Orders

Plaintiff alleges that the City violated the *Nunez* Orders by failing to timely build borough-based jails. Compl. ¶¶ 17–25. Defendants respond that none of those orders actually addressed the closure of Rikers or the construction of alternative facilities. Defs. Br. at 9–10. They further argue that since Plaintiff is neither a member of the *Nunez* plaintiff class nor a party to the *Nunez* action, he has no standing to sue for a violation of any order issued in that matter. *Id.* at 6–9.

To the extent Plaintiff's position is that Defendants' obligations arose from the Consent Judgment, his argument fails. Generally "strangers to a consent decree . . . do not have standing" to enforce its terms. *In re Ditech Holding Corp.*, 2025 WL 3168074, at *13 (S.D.N.Y. Nov. 11, 2025) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002)). There is no question here—and Plaintiff does not dispute—that as a CO he is not a party to the Consent Judgment. The parties are the City, NYC DOC, the United States, and the *Nunez* plaintiff class,

which consists of all present and future inmates of most jails operated by NYC DOC, *see* Consent Judgment § I, not COs or other NYC DOC employees.[2]

Moreover, he cannot and does not claim to be a third-party beneficiary. The Consent Judgment makes clear that the agreement was intended to benefit detainees, not NYC DOC correctional staff. *See* Consent Judgment § I. Such decrees are governed by the federal common law of contracts and courts often look to the Restatement of Contracts for guidance in establishing who, if anyone, is an intended third-party beneficiary. *See Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406, 418 (S.D.N.Y. 2013). Section 302 of the Restatement labels a person an intended beneficiary if "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* (citing Restatement (Second) of Contracts § 302(1) (1981)). "Thus . . . a plaintiff claiming to be the intended third party beneficiary of a government contract must show that he was intended to benefit from the contract and that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it." *Id.*

The Consent Judgment would also need to have "intended to give that third party a legally binding and enforceable right to that benefit." *In re Ditech Holding Corp*, 2025 WL 3168074, at *13. Here, there is no evidence that the parties to the Consent Judgment intended the agreement to benefit him or any other COs, nor did it confer a legally binding and enforceable right upon Plaintiff to enforce its terms. Even if it had, the Consent Judgment does not require the City to build borough-based jails or close Rikers Island. Instead, it imposes a series of policy reforms to improve the safety of existing jails including Rikers. Finally, consent decrees typically do not

---

[2] If anything, Plaintiff is bound by the *Nunez* Orders not as a beneficiary but rather as an employee of DOC, which was a defendant in the *Nunez* matter. *See* Consent Judgment § XXI ("This Agreement shall be applicable to, and binding upon, all Parties, and their officers, agents, employees, assigns, and successors in office.").

6

"create rights enforceable under the Due Process Clause," and as such, "the proper remedy for breach of a consent decree is a suit for . . . enforcement of the decree through judicial sanctions, including contempt, not an action under § 1983." *See, e.g.*, *Febres v. City of New York*, 238 F.R.D. 377, 390 n.16 (S.D.N.Y. 2006). Insofar as Plaintiff's argument rests on other court orders in the *Nunez* matter, such as the *Nunez* Action Plan, it also fails. Nonparties cannot enforce court orders unless "they are the intended beneficiaries" and would otherwise "have standing to intervene under the zone-of-interest test." *Hanyzkiewicz v. Allegiance Retail Servs., LLC*, 2023 WL 2758355 (S.D.N.Y. Apr. 3, 2023). He is not an intended beneficiary and as a result, Plaintiff's claims that rely on the *Nunez* Orders fail for any number of the reasons articulated above.

## B.  Borough-Based Jails

Plaintiff's claims also rest, in part, on the City's alleged failure to comply with the timeline to close Rikers set forth in Local Law 16 of 2021, and open alternative borough-based jails. *See* NYC Local Law No. 16 of 2021; NYC Admin. Code § 4-215; BBJ Plan at 48. This claim too must be dismissed. It is axiomatic that liability under Section 1983 "must be based on a violation of federal constitutional or statutory law, not state law." *P.C. v. McLaughlin*, 913 F.2d 1033, 1045 (2d Cir. 1990). Assuming that Plaintiff brings this action for violations of the relevant local law and regulatory provisions that sought to codify the City's BBJ Plan, *see* BBJ Plan; NYC Local Law No. 16 of 2021; NYC Admin. Code § 4-215, any claim would be based on local and not federal law and would thus fail as a matter of law. Additionally, the aforementioned local laws do not provide Plaintiff, or anyone for that matter, with a cause of action against the City for damages due to alleged non-compliance with the requirements they set forth. And even if these procedural defects could somehow be cured, the BBJ Plan did not require the completion of construction of borough-based jails by May or June 2022, as Plaintiff suggests, Compl. ¶ 15, but rather set 2027

7

as the target for Rikers's closure, five years after Applewhite attacked Plaintiff, and a year from now. Thus, even if the statute provided a cause of action, and that cause of action could serve as the basis for a Section 1983 claim, Plaintiff's assertion that he would not have been in Applewhite's path at that fateful moment is attenuated at best. Regardless, his claims cannot survive to the extent they rely on the BBJ Plan.

### C.  State-Created Danger Exception

Although he fails to articulate the relevant legal framework for the only claim that could potentially support a Section 1983 action until his opposition brief, Plaintiff does assert there that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment pursuant to the state-created danger exception. *See* Compl. ¶¶ 17–25; Dkt. No. 36 ("Pl. Opp'n") at 5. Defendants respond that he fails to plausibly state such a claim.

The Due Process Clause provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has repeatedly held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). There are, however, "two narrow exceptions to this rule: the 'special relationship' exception and the 'state-created danger' exception." *Baker v. Peters*, 2026 WL 74267, at *3 (S.D.N.Y. Jan. 9, 2026) (citing *Tufaro v. City of New York*, 2014 WL 4290631, at *2–3 (S.D.N.Y. Aug. 28, 2014)). Plaintiff alleges a claim under the state-created danger exception, arguing that Defendants "created the unreasonable danger, that nearly resulted in the Plaintiff's death." *See* Pl. Opp'n at 6. He maintains that this claim does not hinge on whether Defendants were bound by the *Nunez* Orders or the BBJ Plan, but rather grew out of their general obligation to protect employees.

8

The state-created danger exception applies where (1) a "governmental official takes an affirmative act that creates an opportunity for a third party to harm a victim (or increases the risk of such harm)," and (2) "the government action shocks the contemporary conscience." *Corr. Offs.' Benevolent Ass'n, Inc. v. City of New York ("COBA")*, 415 F. Supp. 3d 464, 469 (S.D.N.Y. 2019). It is "not enough to allege that a government actor failed to protect an individual from a known danger of bodily harm or failed to warn the individual of that danger." *Id.* (citing *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007)). Rather, the complaint must allege "affirmative, risk-creating acts that actually contributed to the vulnerability of the plaintiff." *Id.* If the complaint shows an affirmative act, the Court must then evaluate whether "the defendant's conduct was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience to sustain a substantive due process claim." *Baker*, 2026 WL 74267, at *3. "Conscience-shocking conduct may be found where government actors engage in conduct posing serious danger that is arbitrary and unjustified by legitimate concerns, but the concept is very narrow and courts defer to local officials' balancing of competing public policy goals." *COBA*, 415 F. Supp. 3d at 469.

In the seminal case on municipal employers' obligations to provide a safe work environment for their employees, *Collins v. City of Harker Heights*, a sanitation worker employed by the city died of asphyxia after entering an unventilated sewer. 503 U.S. 115, 117 (1992). His widow brought a claim pursuant to 42 U.S.C. § 1983 against the city for creating an unsafe work environment, failing to train employees properly to manage the risks associated with their job, and failing to provide sufficient warnings at the work site. *Id.* The Supreme Court dismissed the claims, holding that the Due Process Clause does not guarantee employees "a safe working environment," *id.* at 126, and further explaining "that deliberate indifference to an employee's safety did not constitute conscience-shocking, arbitrary government action of a constitutional dimension, even

where a local law required such measures." *COBA*, 415 F. Supp. 3d at 469 (citing *Collins*, 503 U.S. at 128–30). The Court explained that it had "previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law" and that the alleged omission by officials administering government programs is "based on a rational decisionmaking process that takes account of competing social, political, and economic forces." *Collins*, 503 U.S. at 128. Accordingly, the Court held that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Id.* at 129.

*Collins* and its progeny control the instant matter. Courts have rejected claims similar to those alleged here even when they rely on specific, affirmative conduct, and not the more passive and general conduct alleged by Plaintiff. In *COBA*, for instance, a group of COs sued the City for subjecting them to a state-created danger, challenging NYC DOC's policy of misclassifying violent incidents in jails, which they alleged allowed violent inmates to be incorrectly classified as posing a lesser security risk than they did in reality. 415 F. Supp. 3d at 467. The plaintiffs there endeavored to differentiate their claim from the one rejected in *Collins*, framing it as the result of "Defendants' affirmative act of adopting a policy, practice, or custom of non-reporting, underreporting, misreporting, or downgrading violence statistics in the jails." *Id.* at 470. In explaining its holding, the court stated: "Courts in this district have . . . require[d] that a defendant actually communicate, either explicitly or implicitly, their approval of private violence to the private actor, and one district court has required that the communication be intended to signal such approval." *Id.* at 471. Although the plaintiffs in *COBA* described two incidents in which "unnamed personnel failed to discipline or transfer prisoners who then made second attacks on COs," the court found dispositive their failure to allege "that Defendants actually communicated prior

10

assurances of impunity to prisoners in advance of violent incidents," or "convey[ed] such assurances through their failure to discipline violence." *Id.* At most, the *COBA* court stated, "all Plaintiffs . . . alleged is that Defendants have not always disciplined violent prisoners as required by DOC policies and that, consequently, the institution did not respond to violence on a policy level in a safer fashion . . . ." *Id.* So too here.

Plaintiff does not point to any affirmative hook that could sustain a due process violation under the state-created danger doctrine. Instead, his argument essentially boils down to the type regularly dismissed across circuits, namely that "a government actor's failure to follow a policy or practice that would have increased employee safety renders the government's non-compliant conduct a viable basis for a state-created danger claim." *Id.* (collecting cases). The Due Process Clause is a "limitation on the State's power to act," *DeShaney*, 489 U.S. at 195, but the failure to abide by the *Nunez* Orders, the BBJ Plan or any other municipal policy geared towards safety at Rikers, *COBA*, 415 F. Supp. 3d at 472, is "inaction rather than action." *Est. of Philips v. District of Columbia*, 455 F.3d 397, 404–06 (D.C. Cir. 2006) (finding failure to train firefighters to follow the department's standard operating procedure, which resulted in their deaths, inaction rather than affirmative action). Accordingly, Plaintiff has failed to allege the requisite affirmative conduct on behalf of the City.

Even if he had, his allegations still fail to satisfy the second prong of the state-created danger exception, "in that the conduct alleged does not shock the contemporary conscience." *COBA*, 415 F. Supp. 3d at 472. In evaluating whether conduct rises to this level, courts examine "the particular circumstances of the case, including the nature of the state action, the magnitude and form of the harm inflicted on the plaintiff, and the state of mind of defendants." *Id.* The *Collins* Court looked to state tort law to answer the question of whether the state action was conscience

shocking. There it concluded that Collins's claim was "analogous to a fairly typical state-law tort claim," in that "[t]he city breached its duty of care to [plaintiff's] husband by failing to provide a safe work environment," 503 U.S. at 128, and was therefore not conscience-shocking. It stated that the "Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," and that it would continue to reject claims "that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law." *Id*. Finally, the Court noted that this reasoning is especially applicable to "claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." *Id.* (collecting cases).

Like in *Collins* and *COBA*, Plaintiff's claim that the City failed to abide by its own policy goals of making municipal jails safer sounds in state tort and thus "does not plead an offense of constitutional dimension." *COBA*, 415 F. Supp. 3d at 473. Moreover, the "diffuse and generalized nature of the alleged risk of harm," at issue here, "also distinguishes the instant case from ones in which courts have found sufficient allegations of state-created danger arising from a government employer's conduct." *Id.* In *Pena v. DePrisco*, for example, the state-created danger arose from supervising officers encouraging drunk driving by a fellow police officer, which resulted in the death of three pedestrians. 432 F.3d 98, 111 (2d Cir. 2005). Similarly, in *Okin v. Village of Cornwall-on-Hudson Police Department*, the court held that there was a state-created danger where police officers knew about a specific man's repeated and increasingly escalating domestic violence incidents directed at his girlfriend, and not only failed to intervene, but "repeatedly communicated to [him] that his violence would go unpunished." 577 F.3d 415, 429–30 (2d Cir.

12

2009). Finally, in *L.W. v. Grubbs*, an administrator placed an employee alone with a specific prisoner who presented a known risk of sexual assault. 974 F.2d 119, 123 (9th Cir. 1992).

By contrast, here, the City's alleged failure to comply with its policies or more generally, its failure to create a safe working environment at Rikers, "is much more widespread and the actual danger to any given CO," including Plaintiff, "is much less clear." *COBA*, 415 F. Supp. 3d at 473–74. This diffuse harm, faced by all employees and detainees alike, "weighs heavily against finding that the instant alleged creation of risk shocks the contemporary conscience." *Id.* at 474; *see also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) ("[B]ecause many state activities have the potential to increase an individual's risk of harm, we require... [that] the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large.").

Finally, courts frequently look to whether the type of risk alleged in a state-created danger due process claim is inherent to that profession. "Exposure to such inherent dangers, even when intentional, is not conscience-shocking within the meaning of the substantive due process doctrine," and many professions including "firefighting, law enforcement, and corrections inevitably require public employers to knowingly place employees in danger." *COBA*, 415 F. Supp. 3d at 474 (collecting cases). Ultimately, the City's alleged "failure to effectively mitigate the baseline level of risk . . . which is inherent in [plaintiff's] profession, does not, as a matter of law, frame a set of circumstances that shocks the conscience . . . ." *Id.* at 475. For the foregoing reasons, the allegations that Defendants put Plaintiff in Applewhite's path by failing to improve conditions at the facility or replace it, fail to present a viable claim under the state-created danger exception. As such, this claim must too be dismissed.

## II.    *Monell* Claim

The Court now briefly turns to whether Plaintiff has alleged a *Monell* claim, which is the only mechanism to bring a Section 1983 claim against the City. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–92 (1978). Defendants urge the Court to dismiss Plaintiff's Complaint—even if he has plausibly alleged a constitutional claim—on the basis that he has failed to assert a *Monell* violation. *See* Defs. Br. at 13–14. Although it is true that Plaintiff does not "explicitly allege a *Monell* claim, this Court infers such a claim from his complaint[] and opposition papers." *Liverpool v. City of New York*, 2022 WL 4569594, at *5 (S.D.N.Y. Sept. 28, 2022). "*Monell* expressly prohibits *respondeat superior* liability for municipalities . . . meaning that a plaintiff must demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97–98 (2d Cir. 2020). In particular, a plaintiff must allege "both a constitutional violation and a sufficient causal relationship between the violation and a municipal policy or practice." *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 320 (S.D.N.Y. Nov. 23, 2009). Since the Court concludes that Plaintiff has not plausibly alleged any constitutional violation, to the extent he seeks to assert a *Monell* claim against the City, it necessarily fails. The Court need not address the remainder of the *Monell* test.

## III.    Department of Corrections as Defendant

Finally, Defendants argue that the Complaint should also be dismissed against Defendant NYC DOC because it is not a suable entity. The Court agrees. "The New York City Charter provides that all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." *Adams v. Galletta*, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) (citing

14

N.Y. City Charter Ch. 17 § 396)). "Thus where a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity." *Id.* (collecting cases). Accordingly, even if the Complaint survived against the City, it would be dismissed against the NYC DOC.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in its entirety, albeit without prejudice to filing an amended complaint within thirty (30) days if Plaintiff has a good faith basis to do so. The Clerk of Court is hereby directed to terminate the motion pending at Dkt. No. 26.

SO ORDERED.

Dated:       March 18, 2026
             New York, New York

_____
Ronnie Abrams
United States District Judge