UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KERLY JEAN LOUIS,

Plaintiff,

v.

CITY OF NEW YORK,

Defendant.

24-CV-9718 (RA)

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

This action arises from a brutal attack on Plaintiff Kerly Jean Louis, a correction officer ("CO") at the Rikers Island ("Rikers") Mental Observation Housing Unit, by an incarcerated individual named Dennis Applewhite. Plaintiff originally brought this action against the City of New York (the "City") and the New York City Department of Correction ("NYC DOC") pursuant to 42 U.S.C. § 1983, asserting that their failure to comply with the City's obligations to reform Rikers violated his constitutional right to safety while working in a municipal jail. *See* Dkt. 1 ("Compl."). On March 18, 2026, the Court dismissed the Complaint without prejudice to the filing of an amended complaint. Dkt. 38 ("March 18 Opinion"). Plaintiff thereafter filed his Amended Complaint, which brings a Section 1983 claim solely against the City. Dkt. 39 ("Am. Compl."). Before the Court is the City's motion to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion in its entirety.

**BACKGROUND**

The following facts are derived from the Amended Complaint, along with court orders and public records relied upon in the Amended Complaint.[1] The facts alleged are taken as true and construed in the light most favorable to Plaintiff for the purposes of this motion. *See Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 242 (S.D.N.Y. 2020).

Plaintiff alleges that on October 31, 2022, while working at the Anne M. Kross Center, a Mental Observation Housing Unit at Rikers, he was stabbed in the neck with an 8-inch spike from an industrial fan by detainee Applewhite, resulting in life-threatening injuries. Am. Compl. ¶¶ 3–11. Plaintiff attributes this attack to the City's prolonged failure to comply with policies it was ordered to adopt in an unrelated matter in this district, *Nunez v. City of New York*, No. 21-CV-5845. Am. Compl. ¶¶ 12–18. The *Nunez* action was initiated in 2011 by Mark Nunez, who alleged excessive force by NYC DOC COs while incarcerated at Rikers. *See* Dkt. 43 ("Corsi Decl."), Ex. A ("*Nunez* Compl."). It was subsequently certified as a class action, *id.*, Ex. B ("Stipulation and Order"), with the parties ultimately settling and entering into a Consent Judgment, which defined the plaintiff class as "all present and future inmates confined in jails operated by [NYC DOC], except for the Elmhurst and Bellevue Prison Wards." *Id.*, Ex. C ("*Nunez* Consent Judgment") at 2. The primary aim of the Consent Judgment was to "protect the constitutional rights of the inmates confined in jails operated by [NYC DOC]." *Id.* at 1. The *Nunez* court issued several

[1] A court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). It may, however, consider "documents attached to the complaint; statements or documents incorporated into the complaint by reference; matters of which judicial notice may be taken, such as public records; and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit." *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 502 (S.D.N.Y. 2018). It is undisputed that the Amended Complaint heavily relies on the *Nunez* Orders, *see infra*, and the Court therefore considers those orders. The Court also takes judicial notice of New York City emergency executive orders, *see infra*, as matters of public record, *see Remauro v. Adams*, 2022 WL 1525482, at *1 (S.D.N.Y. May 13, 2022) (taking judicial notice of New York City emergency executive orders as public records).

subsequent orders, including a June 14, 2022 "Action Plan," which focused on planning and implementing reform measures, including hiring new staff, improving security practices, enhancing staff accountability, and compliance reporting. *Id.*, Ex. D ("*Nunez* Action Plan," and collectively with the *Nunez* Consent Judgment, the "*Nunez* Orders"). The matter remains active and is before Chief Judge Swain, who determined that this case was unrelated. Dkts. 13, 15.

Plaintiff initially filed this action in state court, after which the City and then-Defendant NYC DOC removed it to federal court. *See* Compl. The original Complaint relied on facts substantially similar to those set forth in the Amended Complaint, *id.* ¶¶ 7–13, but also relied on an alleged failed initiative by the City to close Rikers and open alternative borough-based jails (the "BBJ Plan"), *id.* ¶¶ 14–16. As the Court understood the Complaint, Plaintiff asserted three claims under 42 U.S.C. § 1983 for (1) non-compliance with the *Nunez* Orders, (2) failure to build borough-based jails under the BBJ Plan, and (3) violation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment per the state-created danger exception. *Id.* ¶¶ 17–25; March 18 Opinion at 4–5.

The City and then-Defendant NYC DOC moved to dismiss the Complaint for failure to state a claim, and the Court granted that motion in its entirety, albeit without prejudice. *Id.* at 15. The Court held that because Plaintiff was not a party to or a third-party beneficiary of the *Nunez* Consent Judgment, he did not have standing to sue for violations of the *Nunez* Orders. *Id.* at 5–7. The Court further held that Plaintiff's claim based on the BBJ Plan failed because, among other reasons, Section 1983 does not provide a vehicle for claims based on violations of state and local law. *Id.* at 7–8. And the Court held that Plaintiff did not plausibly allege a claim pursuant to the state-created danger exception because he did not allege "affirmative," "conscience-shocking" conduct by a government actor that would give rise to such a claim. *Id.* at 8–13. The Court also

observed that NYC DOC is not a suable entity and that all claims must be dismissed as to it for that reason alone. *Id.* at 14–15.

On April 16, 2026, Plaintiff filed his Amended Complaint, which brings one Section 1983 claim against the City for violating Plaintiff's rights under the Due Process Clause. Am. Compl. ¶¶ 27–32. Like the original Complaint, the Amended Complaint alleges that Plaintiff suffered the attack by Applewhite due to the City's failure to comply with policies contemplated in the *Nunez* Orders. *Id.* ¶¶ 3–13. Unlike the original Complaint, the Amended Complaint, rather than citing the BBJ Plan, emphasizes the City's failure to comply with the requirement in the *Nunez* Consent Judgment that inmates with a history of violence be removed from the general population to separate housing areas with special oversight. *Id.* ¶¶ 14–18. Specifically, "[p]ursuant to *Section XVI(5-9) Inmate Discipline (18-Year-Old Inmates)* [of the *Nunez* Consent Judgment], inmates with a history [of] violence, were required to be removed from [the] general population, to therapeutic housing areas under the care of [NYC DOC's] uniform staff, a doctor, and [a] social worker." *Id.* ¶ 14. The Amended Complaint further alleges that on December 20, 2023—over one year after the attack—the New York City Counsel passed Local Law 42 codifying that requirement, *id.* ¶¶ 19–20, but that the "Former Mayor's Office . . . enacted a series of executive orders" that, Plaintiff alleges, "prevented compliance" with Local Law 42 and "went on to create the dangers that resulted in Applewhite's near-death assault," *id.* ¶¶ 21–22. Plaintiff does not, in either the Amended Complaint or his motion papers, specify to which executive orders the Amended Complaint refers.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept as true all factual allegations . . . but [is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

**DISCUSSION**

The Amended Complaint brings one cause of action against the City under Section 1983. Am. Compl. ¶¶ 27–32.[3] Although the Amended Complaint alludes to the City's alleged non-compliance with the *Nunez* Consent Judgment, *see id.* ¶¶ 12–18, it does not appear to again bring claims directly pursuant to it, which this Court held Plaintiff lacked standing to do, *see* March 18 Opinion at 5–7.[4] Instead, the Amended Complaint alleges that the City violated Plaintiff's rights

---

[2] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, omissions, and emphases and adopt all alterations in quoted text.

[3] The body of the Amended Complaint at times refers to NYC DOC as a Defendant or to "Defendants," plural. *E.g.*, Am. Compl. ¶¶ 1–2. To the extent that Plaintiff still attempts to assert a claim against NYC DOC, such claim must be dismissed because NYC DOC is not a suable entity. *See Adams v. Galletta*, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) ("[W]here a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity.").

[4] To the extent that the Amended Complaint can be construed as bringing claims arising under either the *Nunez* Consent Judgment or Local Law 42, they fail. For reasons already articulated by the Court, Plaintiff lacks standing to bring a claim under the unrelated *Nunez* action. *See* March 18 Opinion at 5–7. And as to Local Law 42, a Section 1983 claim is not, as the Court has also explained, a proper vehicle to enforce a local law. *See id.* at 7–8. Plaintiff does not identify any valid cause of action to sue for non-compliance with Local Law 42. Nor does he explain why, if there were such a cause of action, any liability arising from Local Law 42 would apply retroactively to his 2022 injuries.

under the Due Process Clause of the Fourteenth Amendment by "intentionally fail[ing] to act to create an environment that mitigated known Detainees' violent and assaultive behavior, thereby creating the danger of such Detainees' severe assault on fellow inmates and employees of [NYC DOC]." Am. Compl. at 6.

The Supreme Court has held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). There are, however, "two narrow exceptions to this rule: the 'special relationship' exception and the 'state-created danger' exception." *Baker v. Peters*, 2026 WL 74267, at *3 (S.D.N.Y. Jan. 9, 2026) (quoting *Tufaro v. City of New York*, 2014 WL 4290631, at *2–3 (S.D.N.Y. Aug. 28, 2014)). Plaintiff contends that the Amended Complaint states a claim under either exception. *See* Dkt. 47 ("Opp.") at 6–10. Defendant argues that the circumstances of Plaintiff's employment with NYC DOC did not create a "special relationship," *see* Dkt. 50 ("Reply") at 3–5, and that the Amended Complaint does not identify an affirmative action sufficient to allege a state-created danger, *see* Dkt. 44 ("Mot.") at 9–14. The Court agrees with Defendant on both counts.

**A. Special Relationship**

The special relationship exception grows from the Supreme Court's "observation that 'in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals.'" *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (quoting *DeShaney*, 489 U.S. at 198). "[T]he duty arises solely from 'the State's affirmative act of restraining the individual's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint of personal liberty.'" *Id.* (quoting *DeShaney*, 489 U.S. at 200). In other words, "[t]he special relationship exception requires some

form of involuntary custody of the Plaintiff." *Tufaro*, 2014 WL 4290631, at *3.

Plaintiff concedes that "simply being employed by the government does not, by itself, give rise to a special relationship." Opp. at 7. He nevertheless asserts that "for purpose[s] of a special relationship, the Defendant[] assumed sufficient control over Mr. Jean Louis for purposes of sending him to dangerous jail areas, to trigger a duty to provide protection to Mr. Jean Louis." *Id.* at 9; *see also id.* at 6–7 (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (requiring prison officials to ensure reasonably safe conditions *for inmates*)). But Plaintiff nowhere alleges that he, as a CO, was in any form of involuntary custody such that it would establish a special relationship. To the contrary, all the cases the Court is aware of, including those cited by Plaintiff, consistently recognize that employment by the government—even if it places the employee at risk of private violence—does not create a special relationship. For example, in *Tufaro*, which involved a nurse who sued the City and various officers for failing to restrain a violent patient, the court found that the plaintiff "fail[ed] to satisfy" the special relationship exception because she "was not in involuntary custody at the time of her attack." 2014 WL 4290631, at *3. Similarly, in *Stebner v. Utah Department of Corrections*, a District of Utah case cited repeatedly by Plaintiff, *see* Opp. at 7, 9, the court held the same for a medical technician employed by a state prison, *see* 2000 WL 33710898, at *4 (D. Utah Oct. 12, 2000) (finding "no 'special relationship'" because the plaintiff "voluntarily entered into an employment relationship" with the defendants). As in those cases, the special relationship exception does not apply to Plaintiff.

**B. State-Created Danger**

The state-created danger exception applies where (1) a "governmental official takes an affirmative act that creates an opportunity for a third party to harm a victim (or increases the risk of such harm)," and (2) "the government action shocks the contemporary conscience." *Corr. Offs.'*

*Benevolent Ass'n, Inc. v. City of New York* (*COBA*), 415 F. Supp. 3d 464, 469 (S.D.N.Y. 2019). It is "not enough to allege that a government actor failed to protect an individual from a known danger of bodily harm or failed to warn the individual of that danger." *Id.* Rather, the complaint must allege "affirmative, risk-creating acts that actually contributed to the vulnerability of the plaintiff." *Id.* If the complaint shows an affirmative act, the Court must then evaluate whether "the defendant's conduct was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience to sustain a substantive due process claim." *Baker*, 2026 WL 74267, at *3. "Conscience-shocking conduct may be found where government actors engage in conduct posing serious danger that is arbitrary and unjustified by legitimate concerns, but the concept is very narrow and courts defer to local officials' balancing of competing public policy goals." *COBA*, 415 F. Supp. 3d at 469.

With regard to government employees in particular, the Supreme Court has observed that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992). The affirmative act prong is thus not satisfied by "a government actor's failure to follow a policy or practice that would have increased employee safety," which sounds in "inaction rather than action." *COBA*, 415 F. Supp. 3d at 472 (dismissing claims brought by COs based on an alleged government policy of misreporting or underreporting inmate violence statistics). And even where an affirmative act is established, the Supreme Court has cautioned against interpreting "the Due Process Clause . . . to impose federal duties that are analogous to those traditionally imposed by state tort law," especially as to "claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." *Collins*, 503 U.S. at 128.

As this Court discussed in detail in its March 18 Opinion, the original Complaint did not plausibly allege an affirmative, conscience-shocking act merely by alleging a general failure by the City to comply with its policies or create safe working conditions at Rikers. *See* March 18 Opinion at 12–13. The Amended Complaint fares no better. Plaintiff now points to the City's failure to rehouse violent inmates rather than its failure to build borough-based jails. But just as before, the alleged failures by the City to comply with its policies leading up to Plaintiff's assault are properly characterized as "inaction rather than action," *COBA*, 415 F. Supp. 3d at 472, and the City's alleged "failure to effectively mitigate the baseline level of risk . . . which is inherent in [plaintiff's] profession [as a CO], does not, as a matter of law, frame a set of circumstances that shocks the conscience," *id.* at 475.

Finally, in describing the City's alleged non-compliance, Plaintiff makes reference to Local Law 42—which was passed in December 2023, over a year after the assault on Plaintiff—and an unspecified "series of executive orders" that allegedly prevented compliance with Local Law 42 and "went on to create the dangers that resulted in Applewhite's near-death assault." Am. Compl. ¶¶ 19–22. The City suggests that Plaintiff means to refer to Emergency Executive Order 624 ("EEO 624"), which it characterizes as "suspend[ing] compliance with the portions of Local Law 42 that conflicted with the City's ability to meet their compliance obligations pursuant to *Nunez*." Mot. at 4. The Court takes judicial notice of that order, which declared a "state of emergency . . . within the correction facilities operated by [NYC] DOC because of the imminent effective date of Local Law 42," along with Emergency Executive Order 625 ("EEO 625"), which purported to "suspend[] or modif[y]" certain provisions of Local Law 42. EEO 624 at 7, https://perma.cc/GTL4-ENHU; EEO 625 at 7–11, https://perma.cc/8JV4-K2XX. Those emergency executive orders, however, were issued on July 27, 2024, and thus could not plausibly

have "[gone] on to create the dangers that resulted in" the assault on Plaintiff in 2022. Am. Compl. ¶ 22. In any event, even if Plaintiff identified executive orders preceding the assault that stymied the implementation of specialized housing for violent inmates, that would still constitute *inaction* by the City for purposes of the state-created danger exception—not an affirmative, conscience-shocking act giving rise to a claim. *See, e.g.*, *COBA*, 415 F. Supp. 3d at 472 (finding that an alleged "policy of misreporting violence that leads to adverse safety outcomes" was "fundamentally" an allegation that defendants "fail[ed] to follow" existing policy on incident reporting).[5]

**CONCLUSION**

The Court does not doubt that Mr. Louis has suffered dearly from the senseless attack underlying this case. But because the City's alleged failure to protect him does not give rise to a violation of his rights under the Due Process Clause of the Fourteenth Amendment, his claim must be dismissed.

For the foregoing reasons, the City's motion to dismiss is granted in its entirety. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 42 and close this case.

SO ORDERED.

Dated: October 21, 2026
New York, New York

Ronnie Abrams
United States District Judge

[5] Given that the Court concludes that Plaintiff has not plausibly alleged any constitutional violation, to the extent he seeks to assert a *Monell* claim against the City, it necessarily fails. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–92 (1978); *see also Sulehria v. City of New York*, 670 F. Supp. 2d 288, 320 (S.D.N.Y. Nov. 23, 2009) (stating that a plaintiff "must demonstrate both a constitutional violation and a sufficient causal relationship between the violation and a municipal policy or practice").